Cynthia Lee SULLIVAN, Respondent,

v.

Alan Richard SULLIVAN, Appellant.

No. WD 63620.

Missouri Court of Appeals,
Western District.

April 12, 2005.

Kellie Renee Bertels, Jefferson City, MO, for Respondent.

Alan Richard Sullivan, Jefferson City, MO, Pro Se.

Before EDWIN H. SMITH, C.J., SPINDEN and SMART, JJ.

EDWIN H. SMITH, Chief Judge.

Alan Sullivan appeals, *pro se*, the judgment of the Circuit Court of Cole County dissolving his marriage to the respondent, Cynthia Sullivan, with respect to its orders: (1) dividing the parties' marital property; (2) awarding the respondent attorney's fees; and (3) declaring that in any subsequent action to enforce or clarify the dissolution judgment, the prevailing party would be entitled to recover attorney's fees and costs.

The appellant raises nine points on appeal. In Points I–VII, he claims that the trial court erred in dividing the parties' marital property. In Point VIII, he claims that the trial court erred in awarding the respondent attorney's fees of $3,733.75. In Point IX, he claims that the trial court erred in ordering that, in any subsequent action to enforce or clarify the judgment,

the prevailing party would be entitled to recover attorney's fees and costs.

We affirm in part, and dismiss in part.

## Facts

The parties were married on August 13, 1994, in Montrose, Missouri, and separated on October 10, 2001. No children were born of the marriage.

On July 8, 2002, the respondent filed a petition for dissolution of marriage in the Circuit Court of Cole County. The appellant filed his answer and cross-petition on December 3, 2002.

On July 21, 2003, the respondent's petition and the appellant's cross-petition were taken up and heard. Both parties testified on their own behalf, with no other witnesses being called. The appellant sought both maintenance and a disproportionate division of the marital property, alleging that the respondent's economic circumstances were superior to his, his contribution to the acquisition of the marital property was significantly greater, and the respondent had engaged in marital misconduct.

The respondent testified that for the first seven years of the marriage she was in school, eventually earning a medical degree in May 2001, and that her income was expended on her education or for marital expenses. She further testified that, in obtaining her medical degree, she incurred approximately $130,000 in debt, and that she was currently working as a resident at Capital Region Medical Center, in Jefferson City, Missouri, earning a gross monthly salary of approximately $3,100. In addition, she testified that, during the course of the marriage, she, along with her stepfather and brother, had prevailed in a suit for damages for the wrongful death of her mother, receiving a judgment of approximately $1,400,000, but that this judgment

was being appealed. She also admitted that she informed the appellant on May 20, 2002, while he was on active duty in Washington D.C., that the only way she would even consider staying in the marriage was if he returned home before August 13, 2002, and that before the appellant returned home on July 15, 2002, she began having an affair with a co-worker, causing her to file her petition for dissolution of marriage.

The appellant testified that he worked as a trooper for the Missouri Highway Patrol during the marriage, except for October 11, 2001—July 15, 2002, when he was on active duty in the military, stationed in Washington D.C. He further testified that, although he would have preferred to stay in the military due to the increase in income, he applied for and received a family hardship discharge, as requested by the respondent, but that upon his return, she had already filed a petition for dissolution and was unwilling to even meet with him. In addition, he testified that the majority of the marital expenses were paid from his income, and that he received a $20,000 workers' compensation settlement during the marriage, which he also contributed to the acquisition of marital property. Finally, he testified that his current gross monthly salary with the Missouri Highway Patrol was approximately $3,400.

On November 3, 2003, the appellant filed a "MOTION TO COMPEL THE PETITIONER TO PRODUCE SETTLEMENT AND/OR JUDGMENT DOCUMENTS," requesting that the court order the respondent to produce further evidence concerning her wrongful death judgment. At that point, the appellant was acting *pro se* in that he had fired his trial counsel. The motion was taken up and heard on that same date. On November 12, 2003, the trial court denied the appellant's motion

and entered its judgment dissolving the parties' marriage.

In the trial court's judgment, the only property set aside to either party as non-marital was the respondent's medical degree, along with the debt incurred in obtaining it, and the proceeds from her wrongful death award, should there be any. In dividing the marital property, which consisted of the respondent's state-sponsored retirement accounts, several IRA's and numerous stocks, the court found that the appellant was entitled to a disproportionate property division, as he sought. The appellant was awarded his retirement accounts, one IRA and numerous stocks, as well as all of the marital debt, for a net marital property award of $66,971.71. The respondent was awarded two IRA's and several stocks, for a net marital property award of $37,933.30. In addition, the court denied the appellant's request for maintenance and awarded the respondent half of her attorney's fees, $3,733.75.

On November 24, 2003, the appellant filed a "MOTION TO AMEND THE JUDGMENT OR IN THE ALTERNATIVE MOTION FOR A NEW HEARING/TRIAL," requesting that "a new hearing be held so that the Marital and Non-Marital property may be divided fairly." On December 15, 2003, the trial court denied the motion.

This appeal followed.

## I.

■ In Point I, the appellant claims that the trial court erred in dividing the parties' marital property, based on its valuation of his retirement accounts, because the purported evidence relied on by the court in making its valuation was not properly admitted at trial and the record is otherwise insufficient to support the court's valuation. Specifically, he claims that the trial court's valuation of his retirement accounts was based solely on documents not properly admitted at trial, such that it was based on incompetent evidence.

■ A reviewing court must defer to the trial court's marital property division unless it is improper under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), or is an abuse of discretion. *Conrad v. Conrad*, 76 S.W.3d 305, 314 (Mo.App.2002). Appellate courts presume the division of property was correctly decided, and the party challenging the division bears the burden of overcoming that presumption. *Id.*

■ Section 452.330,[1] which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Bauer v. Bauer*, 38 S.W.3d 449, 458 (Mo.App.2001). The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001). Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property. *Taylor v. Taylor,* 25 S.W.3d 634, 640 (Mo. App.2000).

■■ Although the trial court is not expressly required to assign values to marital property, "evidence from which the value of the marital property can be determined must appear." *Spauldin v. Spauldin,* 945 S.W.2d 665, 669 (Mo.App.1997). Thus, a trial court is "prohibited from entering a valuation of marital property not supported by the evidence at trial, but [it], nevertheless, enjoys broad discretion in valuing marital property." *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App.2001). The parties bear an equal burden to present evidence as to the value of marital property. *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App.1999).

This case was tried on July 21, 2003. At trial, neither party introduced any evidence concerning the value of the appellant's retirement accounts, a Missouri Department of Transportation Retirement Account and a PEBSCO Deferred Compensation Account. On November 3, 2003, the appellant filed a "MOTION TO COMPEL THE PETITIONER TO PRODUCE SETTLEMENT AND/OR JUDGMENT DOCUMENTS," which was taken up and heard on that same date. On November 7, 2003, the respondent filed several documents valuing the appellant's retirement accounts. On November 12, 2003, the trial court denied the appellant's motion of November 3, 2003, and entered its dissolution decree, which, *inter alia,* divided the parties' marital property. Included among the marital property were the appellant's retirement accounts, which were valued in accordance with the documents filed by the respondent on November 7, 2003.

The appellant does not challenge the fact that the information contained in the documents filed by the respondent supports the trial court's valuations of his retirement accounts. Rather, he claims that the trial court could not consider them in valuing the accounts in that they were never in evidence.

For her part, the respondent contends that, although no evidence was presented at trial valuing the appellant's retirement accounts, the evidence had been left open by the trial court for the introduction of such evidence. While there is nothing in the trial transcript that would confirm this contention, the transcript of the hearing on the appellant's motion to compel suggests that both parties believed that the evidence had been left open by the trial court for the express purpose of allowing evidence on the value of the appellant's retirement accounts. In that regard, the transcript of the motion hearing reflects that the appellant stated: "Your Honor, further, the Court required the [appellant] to produce the retirement documents and the Pebsco documents post-hearing." It further reflects that the respondent's attorney stated: "But evidence was held open for retirement information. The judge specifically stated that at the trial because Mr. Valentine [the appellant's former trial counsel] did not have that information from [the appellant]."

Based on the statements of the appellant and the respondent's counsel at the motion

hearing, it is apparent, contrary to what the appellant contends, that the trial court left the evidence open for the introduction of evidence concerning the value of the appellant's retirement accounts. Absent any other challenge to this evidence, the trial court was free to consider it in determining the values of the appellant's retirement accounts. Hence, the appellant's sufficiency of the evidence claim, which is predicated on our excluding this evidence, must fail.

Point denied.

## II.

■ In Point II, the appellant claims:

The Court misapplied the law by ignoring the economic conditions of each spouse at the time the division of marital and non-marital property is to become effective contrary to 452.330.1(1) RSMo, *In Re Marriage of Gustin* 861 S.W.2d 639, at 643, *Endebrock v. Endebrock,* 916 S.W.2d 456, *Wright v. Wright,* 1 S.W.3d 52 in that the Court could not make a just division and follow the requirements of statute without considering the drastic change in economic conditions of the parties and the earnings potential of a medical doctor as required in case law.

Before attempting to address the merits of the appellant's claim of error, we must first address the obvious deficiencies of the appellant's Point Relied On. *See Finnical v. Finnical,* 81 S.W.3d 554, 557–58 (Mo. App.2002) (stating that an appellate court must first address briefing deficiencies to determine, *sua sponte,* its own jurisdiction).

■ Rule 84.04(d),[2] governing proper Points Relied On, requires that each point:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: 'The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error].'

" 'Thus, the rule requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.' " *Wilson v. Carnahan,* 25 S.W.3d 664, 666 (Mo.App.2000) (quoting *Hall v. Mo. Bd. of Prob. & Parole,* 10 S.W.3d 540, 543 (Mo.App.1999)). " 'The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review.' " *Id.* The requirements of Rule 84.04(d) apply to a *pro se* appellant. *Landwehr v. Landwehr,* 129 S.W.3d 395, 397 (Mo.App.2004).

The appellant's point relied on is nothing more than a conclusion and abstract statement of the law, which is not sufficient to meet the requirements of Rule 84.04(d) that a point relied on set out the legal bases for reversal and explain in summary fashion why, in the context of the case,

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (2004), unless otherwise indicated.

reversal is mandated on the legal grounds asserted. Rule 84.04(d)(4); *see also Lemay v. Hardin*, 108 S.W.3d 705, 709 (Mo. App.2003). The failure of the appellant to satisfy Rule 84.04(d), with respect to a proper point relied on, is a sufficient basis for us to dismiss this point. *State ex rel. Greene v. Greene*, 51 S.W.3d 537, 541 (Mo. App.2001).

It is not proper for the appellate court to speculate as to the point being raised by the appellant and the supporting legal justification and circumstances. *Stickley v. Auto Credit, Inc.*, 53 S.W.3d 560, 563 (Mo. App.2001). To do so, would cast the court in the role of an advocate for the appellant, which we cannot be. *Id.* Nonetheless, in keeping with our policy that we would prefer to rule on the merits, if possible, rather than dismiss for briefing deficiencies, *Cade v. State*, 990 S.W.2d 32, 36 n. 2 (Mo.App.1999), and in an attempt to understand the appellant's claim, we will view it in light of his argument thereon. *See Geiersbach v. Blue Cross/Blue Shield of Kansas City*, 58 S.W.3d 636, 639 (Mo.App. 2001) (stating that because procedural rules are to be liberally construed to minimize the number of cases disposed of on technical grounds, court would look to appellant's brief, respondent's brief, and pleadings in the record to ascertain the issue on appeal).

Reading the appellant's point in conjunction with his argument thereon is of no assistance in determining what the appellant is attempting to claim as error. Instead, he presents a confusing and discombobulated argument concerning the trial court's failure to hear further evidence concerning the value of the respondent's wrongful death judgment. In addition, he accuses the trial court of favoring the respondent because she is a woman. Where briefing deficiencies are so substantial that, in order to conduct any review, we "would be forced to speculate not only as to the claims being raised, but as to the facts and arguments being relied on in support of the same, we have no choice but to decline review." *Lemay*, 108 S.W.3d at 709. Such is the case here.

Point dismissed.

### III.

■ In Point III, the appellant claims that the trial court erred in dividing the parties' marital property because, in doing so, the court "misapplied the law by not considering the economic contributions of both parties to the acquisition of the marital assets as required by 452.330.1(2) RSMo in that [the court ignored the fact that] 100% of [the respondent's] income was used to pay for her education, which was determined by the Court to be a nonmarital asset[.]"

■ As noted, *supra*, Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including "the contribution of each spouse to the acquisition of the marital property[.]" § 452.330.1(2). However, an award of marital property "cannot be considered deficient for its failure to announce that it was made in accordance with the statutory factors." *Taylor*, 25 S.W.3d at 640 (*quoting Starrett v. Starrett*, 703 S.W.2d 544, 548 (Mo.App.1985)). On appeal, we presume that the trial court considered all the factors of § 452.330 in making its property division and that its award is correct. *Lance v. Lance*, 979 S.W.2d 245, 249 (Mo. App.1998).

Here, the record clearly reveals that, in dividing the parties' marital property, the trial court considered all the relevant factors under § 452.330.1, including the fact that the respondent's income during the

marriage was expended primarily on her education. In its judgment, the court expressly stated that it considered:

[the appellant's] forgone income, [the respondent's] attorney's fees, the economic circumstances of each spouse at the time the division of property is to become effective, *the contribution of each spouse to the acquisition of marital property,* the value of non-marital property set apart to each spouse, the conduct of the parties during the marriage, and the other statutory factors set forth in Section 452.330 RSMo 2000.

(Emphasis added.) Hence, the appellant's claim that the trial court failed to consider the contribution of each spouse to the acquisition of the marital property is without merit. *See Jezewak v. Jezewak,* 3 S.W.3d 860, 865 (Mo.App.1999) (holding that the appellant had not overcome the presumption that the trial court considered all of the factors of § 452.330 inasmuch as the trial court expressly stated in its judgment that it had).

Point denied.

## IV.

 In Point IV, the appellant claims that the trial court erred "by not dividing, or at the very minimum making an equitable adjustment of the Respondent's medical license and degree[,]" because, by failing to classify the respondent's medical degree as marital property, the court misapplied the law, as found in § 452.330.2. We disagree.

Section 452.330, in pertinent part, provides:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

Hence, under § 452.330, all property acquired by either spouse subsequent to the marriage is presumed to be marital property, but this presumption can be overcome by showing, *inter alia,* that the property was acquired by gift, bequest, devise, or descent. *Bauer,* 38 S.W.3d at 459.

It is undisputed that the respondent earned a medical degree during the course of the marriage, and that the appellant supported her, both emotionally and financially, in her efforts. At trial, the appellant requested that the degree be classified as marital property. The trial court, however, refused, finding in the decree that "the medical degree and future earn-

ing capacity of [the respondent] is [the respondent's] non-marital and separate property, which this court has duly considered in making its decision on all relevant issues herein."

In support of his claim in this point, the appellant argues that "a medical degree [is] marital property when one spouse forfeits his or her education to work and enable the other spouse to obtain an education." However, in *Hanson v. Hanson,* 738 S.W.2d 429, 433–435 (Mo. *banc* 1987), the Supreme Court held that, while professional goodwill in an existing business developed during the course of the marriage does constitute marital property, future earning capacity, in and of itself, does not. In so holding, the Court explained:

> Professional goodwill may not be confused with future earning capacity. We have not declared future earning capacity to be marital property. We do not now do so. Instead, we leave to the trial court broad discretion in striking an appropriate balance between husband and wife in the division of property and any award of maintenance.

*Id.* at 435.

■ It is well settled that a professional degree of a spouse is not marital property in that to treat it as such would subject the spouse's future earning capacity to division, which, as we discuss, *supra,* is prohibited. *In re Marriage of Thomas,* 21 S.W.3d 168, 174–75 (Mo.App.2000); *Rapp v. Rapp,* 789 S.W.2d 148, 152 (Mo. App.1990).[3] Rather, a spouse's contribution to the other spouse's obtaining a professional degree, as was the case here,

may be considered by the trial court in making a fair and equitable division of the parties' marital property, and, if warranted, the contributing spouse may be awarded a higher percentage of the property that is properly classified as marital. *In re Marriage of Studyvin,* 779 S.W.2d 338, 339 (Mo.App.1989).

Based on the foregoing principles, the trial court did not err in failing to include the respondent's medical degree as marital property of the parties, as the appellant contends.

Point denied.

## V.

■ In Point V, the appellant claims that the trial court erred in dividing the parties' marital property because, in doing so, the court misapplied the law, as found in § 452.330.2, by failing to classify the respondent's wrongful death award as marital property. We disagree.

As we discussed, *supra,* all property acquired by either spouse subsequent to the marriage and prior to the dissolution decree is presumed to be marital property. § 452.330.3; *Bauer,* 38 S.W.3d at 459. This presumption can be overcome by showing that the property was acquired by a method listed in § 452.330.2. § 452.330.3; *Bauer,* 38 S.W.3d at 459. However, the methods listed in § 452.330.2 are not exclusive. *Silcox v. Silcox,* 6 S.W.3d 899, 903 (Mo. *banc* 1999). As a result, the Supreme Court has recognized that other statutory provisions, providing that certain property

---

**3.** The appellant cites *Riaz v. Riaz,* 789 S.W.2d 224, 227 (Mo.App.1990), for the proposition that, under certain circumstances, professional degrees can be classified as marital property. While we agree that *Riaz* could reasonably be read to support such a proposition, inasmuch as the court stated that "the factors which justify classifying the present value of

the educated spouse's earning capacity as a marital asset are not present here," thereby implying that, under different circumstances such factors could be present, such a reading is clearly contrary to the Supreme Court's holding in *Hanson,* which, of course, is controlling. *Mo. Const. art. V, § 2.*

is not to be considered marital property, do not conflict with § 452.330.2, such that both provisions have effect. *See Id.* (holding that § 165.572.2, providing that teacher's retirement benefits are not to be considered martial property, does not conflict with § 452.330.2, such that "both statutes remain in full force").

Here, it is undisputed that, during the course of the marriage, the respondent was a prevailing party in a suit for damages for the wrongful death of her mother. At trial, the appellant requested that the proceeds from the respondent's claim be classified as marital property. The trial court, however, found that "the wrongful death suit of [the respondent's] mother is [the respondent's] non-marital and separate property, which this court has duly considered in making its decision on all relevant issues herein."

Missouri follows the "analytic approach" in classifying personal injury awards as marital or non-marital property, under which "the purpose for which the recovery is received controls its classification." *Heslop v. Heslop,* 967 S.W.2d 249, 253–54 (Mo.App.1998); *Mistler v. Mistler,* 816 S.W.2d 241, 249 (Mo.App.1991). However, the Eastern District of this court recently held, in *Tambone v. Tambone,* 162 S.W.3d 1, 2004 WL 2590497 (E.D.Mo.App. Nov. 16, 2004), that the proceeds from wrongful death claims obtained during the marriage, as opposed to the proceeds from general personal injury claims, are non-marital property, regardless of the purpose for which the recovery was received. In doing so, the court explained that wrongful death claims are purely statutory, and that under the governing wrongful death statute, § 537.080, only a limited group of persons are entitled to bring a claim for wrongful death. *Id.* at 5. The court further explained that § 537.095 specifically states that: "Any settlement or

recovery by suit [brought pursuant to § 537.080] shall be for the use and benefit of those who sue or join, or who are entitled to sue or join, and of whom the court has actual written notice." *Id.* at 5. Hence, the court held that, because a spouse is not entitled to sue under § 537.080, and § 537.095 specifically prohibits anyone who is not entitled to sue from sharing the proceeds of such a claim, such proceeds cannot be classified as marital property and divided by the trial court because, to do so would violate § 537.095. *Id.* Hence, essentially the court held that § 537.095 prohibited spouses from sharing in a recovery in a wrongful death action obtained during the marriage, and, based on the holding of *Silcox,* that statute did not conflict with § 452.330, such that it must be given full effect.

We find the logic of *Tambone* persuasive. Consequently, we hold that the trial court did not err in classifying the proceeds from the respondent's wrongful death recovery as non-marital property. The appellant was not entitled to bring a suit for the wrongful death of the respondent's mother under § 537.080, and, therefore, was prohibited from sharing in the proceeds from any such suit under § 537.095.

Point denied.

## VI.

In Point VI, the appellant claims that the trial court erred in dividing the parties' marital property because, in doing so, the court misapplied the law by failing to consider, as required, all the factors of § 452.330.1. Specifically, he claims that the trial court failed to consider the conduct of the parties during the marriage, as required under § 452.330.1(4), in that the court failed to consider the "misconduct perpetrated by [the respondent during the marriage]."

Here, although the record contains evidence that the respondent engaged in marital misconduct during the marriage, the record also clearly demonstrates, as we discussed in Point III, *supra,* that the trial court considered all of the relevant factors under § 452.330 in dividing the marital property. In that regard, the trial court expressly stated that it considered:

> [the appellant's] forgone income, [the respondent's] attorney's fees, the economic circumstances of each spouse at the time the division of property is to become effective, the contribution of each spouse to the acquisition of marital property, the value of non-marital property set apart to each spouse, *the conduct of the parties during the marriage,* and the other statutory factors set forth in Section 452.330 RSMo 2000.

(Emphasis added.) Hence, the appellant's claim that the trial court failed to consider the conduct of the parties during the marriage is without merit. *See Jezewak,* 3 S.W.3d at 865 (holding that the appellant had not overcome the presumption that the trial court considered all of the factors of § 452.330 inasmuch as the trial court expressly stated in its judgment that it had).

Point denied.

## VII.

■ In Point VII, the appellant claims that the trial court erred in dividing the marital property because, in doing so, the court "misapplied the law by dividing the $20,000 [workers' compensation] settlement which [he] received ... in that these funds [were] for future lost wages ... and [were] to be set aside as non-marital[.]" Even assuming, *arguendo,* that the trial court erred as claimed, the appellant's point must fail in that he waived any objection to the court's property division on that ground.

In his "Statement of Marital and Non–Marital Property and Liabilities," the appellant listed his workers' compensation settlement as marital property. During his testimony, he stated that he was seeking a fair and equitable division of the parties' marital property and did not request that the court set off any separate property to him. Hence, he waived any claim that the trial court erred in failing to set off to him, as separate property, the proceeds of his workers' compensation settlement. *See Roth v. Roth,* 760 S.W.2d 616, 618 (Mo.App.1988) (holding that the appellant waived his claim that the trial court erred in failing to classify the family home as 50% marital property and 50% non-marital property in that he "listed the house as marital property"). In other words, "[i]nvited error at trial cannot serve an appellant on appeal." *Id.*

Point denied.

## VIII.

■ In Point VIII, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $3,733.75 because it "misapplied the law and abused [its] discretion by awarding [the respondent] one-half of her attorney fees and not awarding [him] his as set forth in 452.355.1[.]" Specifically, he claims that "[t]he court must look at what is just from the view of a reasonable person after considering the financial resources of the parties along with [the] other factors on the date of dissolution and abused [its] discretion in not doing so." Hence, essentially the appellant is claiming that the trial court erred in awarding the respondent attorney's fees in that it misapplied § 452.355.1 by failing to consider all relevant factors.

■ Missouri courts typically follow the "American rule" with regard to awards

of attorney's fees and costs under which each litigant should bear his or her own litigation expenses. *Laubinger v. Laubinger,* 5 S.W.3d 166, 181 (Mo.App.1999). "However, a trial court may order one party to pay the other's attorney's fees and costs where such is authorized by statute." *Id.* (citation omitted). In that regard, § 452.355.1 provides:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

■■■■■ While § 452.355.1 allows a trial court to award attorney's fees in a dissolution proceeding, it does not require it. *In re Marriage of Baker,* 986 S.W.2d 950, 958 (Mo.App.1999) (citation omitted). " 'The trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate.' " *Bauer,* 38 S.W.3d at 457 (quoting *Taylor,* 25 S.W.3d at 649). This court will not reverse a trial court's decision as to an award or denial of attorney's fees pursuant to § 452.355, unless we find that the court abused its discretion. *Id.* (citation omitted). The trial court's decision as to a request for an award of attorney's fees is presumptively correct. *Adams v. Adams,* 51 S.W.3d 541, 549 (Mo. App.2001). And, we presume that the trial court considered all of the factors under § 452.355.1, and the complaining party bears the burden of overcoming that presumption. *See Clark v. Clark,* 101 S.W.3d

323, 331–32 (Mo.App.2003) (holding that, even though the trial court did not expressly indicate that it considered all of the factors under § 452.355, the appellant failed to overcome the presumption that it did).

The trial court, in awarding attorney's fees to the respondent, did not articulate the reasoning behind its decision to do so, nor did it expressly state that it considered all of the relevant factors under § 452.355.1. The appellant claims that the trial court could not have considered all of the relevant factors under § 452.355.1 because, if it had, it would not have awarded attorney's fees to the respondent. In support of his claim, he primarily argues that the trial court failed to consider the parties' financial resources, as required under § 452.355.1, as the respondent's financial resources were superior to his due to the fact that she was a doctor and the prevailing party in the wrongful death action, such that the parties' financial resources would actually justify an award of attorney's fees to him.

As to the parties' financial resources, it is undisputed that the respondent is a medical doctor and the appellant is an Officer with the Missouri Highway Patrol. However, as found by the trial court, the respondent's gross monthly salary was $3,102.00, while the appellant's was $3,402.00. In addition, the record reveals that the respondent incurred $131,531.00 in debt in order to obtain her medical degree, which the court set aside to her as non-marital debt, and that the appellant had no significant debt other than his portion of the marital debt. And, while there is no question that the trial court set aside the respondent's wrongful death judgment to her as non-marital property, at the time of trial this judgment was being appealed, such that its value was unknown.

The appellant, based on the fact that the respondent is a doctor, would have this

court infer that the trial court did not consider the parties' financial resources in reaching its conclusion that an award of attorney's fees to the respondent was justified. This we cannot do. In fact, in direct opposition to the appellant's claim, the parties' financial resources, taking into account the respondent's significant non-marital debt and the fact that the appellant's monthly salary was $300 higher than the respondent's justifies an award of attorney's fees to the respondent.

Point denied.

## IX.

■ In Point IX, the appellant claims that the trial court erred in ordering that, in any subsequent action to enforce or clarify the judgment, the prevailing party would be entitled to recover attorney's fees and costs, because it violated § 452.355.1. We agree.

> In its judgment, the trial court ordered: In the event that either party brings an action for failure to perform any of the obligations imposed by this order on him or her, or for enforcement or clarification of the order, the prevailing party in such action shall have the right to recover his or her attorney's fees and litigation costs reasonably expended in prosecuting or defending the action. However, no attorney's fees shall be so recovered by a party filing an action unless that party seeking to recover said attorney's fees and costs shall have mailed to the breaching party written notice of the alleged failure to perform, and said alleged failure was not cured within ten (10) days after the date of mailing said notice by certified mail to the alleged breaching party's business or residence address.

As noted, *supra*, § 452.355.1 provides, in pertinent part, that the trial court may, from time to time, enter an award of attorney's fees and costs "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]"

In *Keller v. Keller*, 18 S.W.3d 589, 600–01 (Mo.App.2000), we considered the propriety of the same provision for attorney's fees in the trial court's judgment that the appellant challenges here. In holding that such a provision is contrary to § 452.335.1, we explained: "By this provision, the trial court was not only attempting to limit the relevant factors it would consider in awarding attorneys fees in future proceedings, but was attempting to limit recovery to a prevailing party only." *Id.* at 601. Because of this, we held the provision was "null and void." *Id.; see also Roberts v. Roberts*, 800 S.W.2d 91, 93 (Mo.App.1990). Hence, the provision in the trial court's judgment declaring that in any subsequent action to enforce or clarify the dissolution judgment, the prevailing party would be entitled to recover attorney's fees and costs, is null and void. As a result, we dismiss this point, as "there is nothing for an appeals court to review in a null and void order." *Davis v. Oaks*, 942 S.W.2d 464, 467 (Mo.App.1997).

Point dismissed.

### Conclusion

The circuit court's judgment of dissolution is affirmed, except with respect to its order declaring that in any subsequent action to enforce or clarify the dissolution judgment, the prevailing party would be entitled to recover attorney's fees and costs, which we dismiss as being null and void.

SPINDEN and SMART, JJ, concur.